(C.D. 4015)

SURELITE PRODUCTS CO. ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 6, 1970)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman* and *Peter Jay Baskin*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: The cases listed above, consolidated for the purpose of trial, involve the classification of certain articles described on the invoice as "Wire Bulbs for Fluorescent Starters". Said merchandise, after importation, is enclosed in a metal case and certain electrical connections are made which permit its use as a starter for fluorescent lights of the preheat type. The regional commissioner of customs at the port of New York classified the involved merchandise under item 685.90, Tariff Schedules of the United States, and assessed duty thereon at the rate of 17.5 per centum ad valorem.

Plaintiffs by the timely filing of their protests claim the imported articles to be dutiable at only 11.5 per centum ad valorem under item 688.40, Tariff Schedules of the United States, on the theory that they are not switches and hence are more properly subject to classification as electrical articles and electrical parts of articles.

The statutory language involved herein provides as follows:

| | | |
|---|---|---|
| 685.90 | Electrical switches, relays, fuses, lightning arresters, plugs, receptacles, lamp sockets, terminals, terminal strips, junction boxes and other electrical apparatus for making or breaking electrical circuits, the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof_____ | 17.5% ad val. |
| 688.40 | Electrical articles, and electrical parts of articles, not specially provided for_____ | 11.5% ad val. |

The record consists of the oral testimony of two witnesses, one called on behalf of each party, as well as eight exhibits received on behalf of plaintiffs and three exhibits received on behalf of defendant.

The factual situation of what the importation consists of and its

intended function as part of a starter for fluorescent lights of the pre-heater type is not in dispute. Basically, an imported article such as exhibit 1 is combined in this country with a bakelite wafer to which the proper electrical connections are made and then enclosed in a metal container. Exhibit 2 is imported with the bakelite disc and therefore only requires it to be enclosed in a metal container. The completed starters are represented by plaintiffs' exhibits 4 and 5 respectively.

The starters are made to meet the Underwriters Laboratories specification. Both witnesses agree with the definition of the term which as set forth in the case of *Brown Boveri Corp., Gehrig Hoban & Co., Inc.* v. *United States*, 53 CCPA 19, C.A.D. 870 (1966). The record also establishes without contradiction that there are two circuits in a completed fluorescent light. The first circuit is known as the preheat circuit of which the starter is an integral part. The second circuit is the fluorescent light circuit. The preheat circuit has two functions, to provide preheat time and the starting voltage. The operation of a fluorescent light was described as follows:

> * * * When current is applied to the starter, the glass [sic] within the glow bulb, as the name indicates, begins to glow. The end result is heat. The heat generated by the glowing of the gas affects the bimetal which is sensitive to heat and causes the bimetal to move to the adjoining post. This distance is a calibrated distance and the time that it takes the bimetal to move from its original position to the post is called the preheat time. This is a time in which the coils at either end of the fluorescent tubes are heated. Current is supplied to them, the coils glow, there is an emission of electrons which cause the mercury within the fluorescent tube to ionize and vaporize. As the bimetal moves over to the post the gas ceases to flow, removing the source of heat. The natural thing is for the bimetal to return to its normal position that it started from. At the very instant that the bimetal leaves the post it permits a high inductive current to be applied to the fluorescent tube, igniting the tube. That completes the function of the fluorescent starter.

There is also no question that once the fluorescent lamp is lit the starter may be removed without affecting the operation of the light. While both witnesses disagree as to the designation of the starter as a switch, they do agree that the starter does make and break the preheat circuit and that once the light is lit, the starter may physically be removed without affecting the operation of the fluorescent lamp.

Based upon the record as made plaintiffs contend the imported wire bulbs for fluorescent starters are not switches and are therefore subject to classification as electrical parts of articles not specially provided for under item 688.40 as claimed.

Neither party has urged or presented any evidence to the effect that the principle of commercial designation is applicable in this case.

Accordingly, the common meaning of the term switch must be ascertained. Both witnesses have agreed with the definition of the term switch as set forth in the *Brown Boveri* case, *supra*, quoted from Webster's New International Dictionary, 1950.[1] The court also stated therein that reliance should not be confined, in a technical matter, to general dictionaries to determine the meaning of a term. Citing *Firth Sterling, Inc.* v. *United States*, 48 CCPA 130, C.A.D. 779 (1961).

In Electrical Engineers' Handbook by Pender and Del Mar, Fourth Edition, the following information is contained:

> Lamp Starting. Lamps are designed for operation either on preheat starting circuits or so-called high-voltage instant-start circuits. The preheat starting circuit makes use of a replaceable starter, the function of which is to complete a separate circuit, so that a preheat current can flow through the filament cathodes and heat them momentarily, after which the *switch* opens automatically and the lamp starts. A small 0.006 uf condenser across the *switch* contacts aids in starting but is primarily useful to shunt out line-lead harmonics, which may cause radio interference. Several types of starter switches are available. * * * [Italics supplied.]

The record, in addition to the above references to switch, also establishes that the starter does make and break an electric circuit[2] to be sure it is in the preheat circuit and not the fluorescent light circuit. The mere fact that the imported article when assembled into a starter functions as a switch in the preheat circuit and not in the fluorescent light circuit does not make it any less a switch. Nor does the fact that the completed article is not sold as a switch but as a starter affect its classification since it is the function of the article involved and not the designation which is determinative herein. It matters not that the preheat circuit is not used after the lamp is lit. The function of the starter falls within the common meaning of the term switch or parts thereof. Therefore the imported article is properly subject to classification thereunder.

The claim in the protests is therefore overruled.

Judgment will be entered accordingly.

(C.D. 4016)

———

[1] A device for making, breaking, or changing the connections in an electric circuit.
[2] See Record 41, 46, 71.