HARPER-WYMAN COMPANY, PLAINTIFF v.

THE UNITED STATES, DEFENDANT

Court No. 75–2–00425

(Decided January 9, 1981)

*Barnes, Richardson & Colburn* (*David Riggle* and *Steven Sonnenberg* of counsel) for the plaintiff.

*Alice Daniel,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Susan Handler-Menahem,* trial attorney, of counsel) for the defendant.

WATSON, Judge: The merchandise in this action consists of articles described in the commercial invoice as "electric thermostats" (product class 67—series 67) and "infinite range controls" (product class 66—series 66). These articles were classified under TSUS item 685.90,[1] as electrical switches, or other apparatus for making or breaking electrical circuits, dutiable at the rate of 8.5 percent ad valorem.[2]

Plaintiff-importer claims that the merchandise is properly classifiable under TSUS item 684.30, as parts of cooking stoves and ranges dutiable at the rate of 4 percent ad valorem,[3] or in the alternative, under item 711.84, TSUS, as thermostats, dutiable at the rate of 7 percent ad valorem.[4] Defendant's final position was that the series 67 merchanside should be classified as thermostats under item 711.84, TSUS, and that the series 66 merchandise was correctly classified as switches under item 685.90 or, alternatively, should be classified as thermostats, Defendant stipulated that all the merchandise is chiefly used as parts of cooking stoves and ranges.

At the close of the trial the court ruled for plaintiff and ordered the parties to submit findings of facts and conclusions of law after the preparation of the transcript. The parties have filed their respective proposals and the court is now ready to issue judgment—a judgment which, of necessity, withdraws one of the rulings favorable to plaintiff.

[1] As amended by Presidential Proclamation No. 3822 of December 12, 1967, T.D. 68–9.

[2] Item 685.90 of the TSUS is defined as follows: Electrical switches, relays, fuses, lighting arresters, plugs, receptacles, lamp sockets, terminals, terminals strips, junction boxes and other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof.

[3] This provision reads: Electric instantaneous or storage water heaters and immersion heaters; electric soil heating apparatus, and electric space heating apparatus; electric hair dryers, hair curlers, and other electric hair dressing appliances; electric flatirons, electro-thermic kitchen and household appliances, electric heating resistors other than those of carbon; all the foregoing and parts thereof: 684.30—Cooking stoves and ranges, and parts thereof.

[4] Item 711.84 is described as follows: Pressure gauges, thermostats, level gauges, flow meters, heat meters, automatic oven-draught regulators, and other instruments and apparatus for measuring, checking or automatically controlling the flow, depth, pressure, or other variables of liquids or gases or for automatically controlling temperature, all the foregoing and parts thereof not provided for in subpart C of this part.

SERIES 67—OVEN CONTROL

The series 67 oven control is housed in a box measuring approximately 3 inches by 3 inches. From the housing protrude a metal spindle (on which a knob is placed after importation) and a long, thin, flexible metal tube, which is the heat-sensing portion. Turning the control knob from the "off" position mechanically closes all the electrical contacts inside the device and allows the electricity to pass through to the heating elements in the oven. This completed electrical circuit can be broken at two or three contact points (depending on whether the device is designed to control one or two heating elements). One of those contact points is solely under the control of the initial mechanical switching portion. The other contact points are under the control of a thermostat, designed to maintain the temperature selected on the knob.

The oven heat causes fluid in the tubular sensing portion to expand into a bellows inside the control device and press open one of the contacts. That break in the electrical circuit allows the heating element to cool. When it cools to a temperature 10 to 15 degrees below the setting on the knob, the withdrawing fluid lets the bellows contract, releasing its pressure on the contact point, allowing the contact to close and heating to resume. When the user wants to shut off the oven completely, the knob is turned to the off position, thus breaking the circuit mechanically without relation to the thermostatically controlled contact.

From the above description it becomes clear that the series 67 oven control is an inseparable combination in one unit of a mechanical switch and a thermostat. The tariff schedules have a classification by name for articles which are switches and a separate classification for articles which are thermostats. However, neither one of those classifications is adequate to describe this article, in which both the mechanical switch and the thermostat play a significant functional role. Even granting the thermostat to be the most noteworthy feature of the device, the mechanical switch could not be relegated to an incidental role because, aside from being the initial switch, it is essential to the safe operation of the oven. In the event of thermostat failure, the mechanical switch is the only means to stop uncontrolled heating and its possible disastrous effects.

The device is generally comparable to the multipurpose article which served both as a switch to flash an automobile's front and rear signal lights, and as an indicator light on the dashboard to monitor the operation of the brake lights. In *Fedtro, Inc.* v. *United States,* 59 CCPA 16, 449 F. 2d 1395 (1971) the Court of Customs and Patent Appeals held that the article was not properly classifiable as a switch. A similar conclusion was reached in *Bosch Corp.* v. *United States,*

63 Cust. Ct. 96, C.D. 3881 (1969) in which this court held that an automobile starter device which combined a mechanical function of engaging the starter motor into gear with the flywheel and allowed current to move from the battery to the starter motor was more than a switch. Here, too, we have a single device containing a number of functionally distinct portions, all working to the same end. The classification which might be appropriate for a portion is not correct for the whole. The only classification which accurately describes this device as an entirety is one which recognizes its chief use as a part of a cooking stove.

For an interesting result which relied purely on relative specificity to resolve the classification of oven range controls under prior law, see *C. J. Tower* v. *United States*, 53 Cust. Ct. 260, Abstract No. 68748 (1964).

SERIES 66—INFINITE RANGE CONTROL

When the court held for the plaintiff at the conclusion of the trial, it was of the impression that the relationship between the mechanical switch and the power regulating portion of the series 66 top burner control was the same in principle as the relationship between the mechanical switch and thermostat of the series 67 oven control. However, the power regulating portion of the series 66 turns out to be nothing more than another variety of switch. Originally, the court thought that it allowed an infinitely variable, continuous flow of electricity, analogous to the control of a water faucet. Closer study of the exhibits and testimony show that the infinite variation is actually the result of a proportioning switch, the intermittent opening and closing of a second contact point under the influence of a heat motor. In other words, a specially constructed piece of metal located near the contact point is heated by the passage of electricity through the control device itself (not by the heat at the point of use, as in the thermostat). This piece of metal then breaks the contact with a frequency determined by its proximity to the contact point, which proximity is varied by the choice of temperature on the control knob. In short, the infinite variation is achieved by the opening and closing of a switch, making the series 66 nothing more than a combination of two switches.

The manner in which a switch breaks a circuit is of no particular importance, unless, of course, it does so in a manner which makes it an article recognized in a more specific tariff classification, such as thermostat. Accordingly, the special mechanism involved in making and breaking a circuit by means of a heat motor is still a switch. Cf. *Brown Boveri Corp.* v. *United States*, 53 CCPA 19, C.A.D. 870

(1966). See also, *Surelite Products Co.* v. *United States*, 64 Cust. Ct. 438, C.D. 4015 (1970).

For the reasons expressed above, the original ruling for plaintiff is maintained for the series 67 oven control but withdrawn for the series 66 infinite range control. Accordingly, it is held that the series 67 is properly classifiable as a part of a stove or range under item 684.30, the only classification which describes it as an entirety. The series 66 was properly classifiable as a switch under item 685.90, and that classification is affirmed.

Judgment will enter accordingly.